JULIUS MISTILSKI v. GERMAN INSURANCE COMPANY OF FREE-PORT, ILLINOIS, and Another.[1]

May 11, 1896.

Nos. 9863—(151).

Fire Insurance—Action on Policy—Directing Verdict.

Evidence considered in connection with the issues tendered by the pleadings, and *held*, that the court erred in directing a verdict for the defendant.

Appeal by plaintiff from an order of the district court for Wright county, Pond, J., denying a motion for a new trial. Reversed.

*W. H. Cutting*, for appellant.

*George L. Bunn*, for respondents.

MITCHELL, J. In view of the state of the pleadings and the peculiar lines upon which the case was tried by both parties, it requires a close analysis of the record to determine just where the parties stood when the evidence closed.

The plaintiff declared on a policy of insurance against loss by fire executed by the defendant insurance company; loss, if any, payable to the defendant banking company, as mortgagee. He alleged that the conditions of the policy were the same as those contained in what is known as the "Minnesota standard policy"; that the insured property was destroyed by fire; and that he performed all the conditions of the policy, including the furnishing the proofs of loss. The sixth subdivision of the complaint also contained what we construe as amounting to an allegation that the defendant insurance company waived the conditions of the policy as to the time within which proofs of loss should be furnished.

The answer of the insurance company admitted the execution of the policy, and that its conditions were the same as those con-

[1] Reported in 67 N. W. 80.

tained in the Minnesota standard policy, except that it contained
the further and additional condition (not contained in the stand-
ard form), called "Schedule A, 11," that, if the property covered
by the policy became incumbered by mortgage or otherwise, the
entire policy should be void, unless otherwise provided by agree-
ment indorsed upon or added to the policy. The answer further
alleged a breach of this condition by the plaintiff; also that he
had failed to furnish the proofs of loss within the time specified
in the policy.

The reply denied that Schedule A, 11, was any part of the pol-
icy; that, if it was attached to it, it was so attached without plain-
tiff's knowledge or consent. The reply also admitted that, after
the policy was issued, the plaintiff had executed a second mort-
gage upon the property, but alleged that the insurance company
had notice and knowledge of the fact at and before the time it
was executed.

Upon this state of the pleadings, the parties went to trial. The
loss was admitted. Upon the trial, the plaintiff offered in evidence
a copy of the Minnesota standard policy, for the purpose of show-
ing what the conditions were. There was some colloquy between
court and counsel on the subject, and it does not distinctly appear
from the record whether this copy was introduced in evidence or
not. Defendant's counsel, in his brief, states that it was, and we
assume such was the fact, although it is not a matter of much im-
portance, inasmuch as both parties were agreed as to what the
conditions of the standard policy were, and that its conditions were
the same as those of the policy issued to plaintiff, unless the one
as to incumbrances. It seems also to have been agreed that the
standard form does not contain the condition as to incumbrances.
The only issue between the parties as to the terms of plaintiff's
policy was whether it contained this condition; and the only con-
ditions of his policy which defendant claimed plaintiff had violated
were this one, and the one as to the time within which proofs of
loss were to be furnished. The defendant's counsel then produced
a policy, saying, "Here is the original policy, and the only one."

The plaintiff called as a witness the local agent of the defend-
ant, who identified this policy as the one which he had issued to
the plaintiff. Upon plaintiff's then offering the policy in evidence,
defendant's counsel said: "I have no objection to it as the policy

which the agent issued, but a new policy was afterwards issued by the company, because of want of authority by local agents to issue a policy of this character on farm property." The policy was then admitted in evidence. Upon the policy appeared the indorsement, "Cancelled Feby. 22, 1895," with the signature of the local agent attached. Upon cross-examination of the witness by defendant's counsel, he testified that, when the policy was issued, he delivered it to the agent of the mortgagee, to whom the loss was payable, who kept it until he returned it, a few days afterwards, to the witness for cancellation, and that he (the local agent) canceled it by orders of defendant's state agents at St. Paul. This policy contained the condition (Schedule A, 11) that it should be void if the property became incumbered by mortgage.

The plaintiff then made certain offers of evidence, the evident object of which was to prove (1) that this condition was in fact no part of the policy, but, if it was, (2) that the defendant had waived it. The offers were excluded, and properly so, for the reason that, if the plaintiff had been permitted to introduce all the evidence he offered, it would have been wholly immaterial and insufficient to establish either of these facts. The plaintiff further introduced evidence tending to show that the defendant had, by its conduct, waived the condition of the policy as to the time within which the proofs of loss were to be furnished, which, we think, made a case for the jury on that question. On this condition of the evidence, the court directed a verdict for the defendant.

It will be observed that the defendant admitted the existence of a live policy up to and at the date of the loss, unless it had been previously avoided by a breach of the condition against incumbering the property. Both parties were agreed as to the terms of this policy, except this condition. If it was in the policy, it was a condition subsequent; and it was not incumbent on the plaintiff, in the first instance, either to negative its existence, or its breach. That burden was on the defendant, if it proposed to assert it as a ground of avoiding the policy. Hence, as the pleadings stood, all plaintiff would have had to prove was the loss, and the furnishing of proof of it, or the waiver of such proof by the defendant. Had he rested there, he would have made out his case. But he introduced a new element into the case, by offering in evidence the policy already referred to, which contained this condi-

tion against incumbering the property.   Had defendant kept silent when this policy was introduced by the plaintiff, it would have occupied a better position than it now does.   It might, perhaps, have relied on the evidence introduced by the plaintiff himself to establish its defense.   But its counsel not only asserted that this policy had been canceled, and another policy issued in its place, but, by cross-examination of the local agent, proved that the policy in evidence had been taken up and canceled by order of the defendant's state agents, very shortly after its issue, and long before the loss.   In its answer, it had admitted that there was a live policy at the time of the loss, unless avoided by breach of a condition against incumbrances; and, by its assertions and proof on the trial, it took the position that this policy had been taken up and canceled a very few days after its issue.   If so, then there must have been another policy,—at least, it was a question for the jury whether there was or not; and defendant did not prove that it contained the condition against incumbrances.   Therefore, the court erred in directing a verdict for the defendant.   We have not been able to determine upon what precise theory of the law of the case counsel on either side conducted the trial; but, upon the whole record, we think a new trial should be granted.

Order reversed.